UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ERIN HANKS, *et al.*,          )<br>                                                   )<br>              Plaintiffs,         )<br>  vs.                                         )<br>                                                   )<br>BRIAD RESTAURANT GROUP, L.L.C.,  )<br>                                                   )<br>              Defendant.         )<br>_____)  | Case No.: 2:14-cv-00786-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the Motion to Compel (ECF No. 42) filed by Defendant Briad Restaurant Group, L.L.C. ("Defendant"). Named Plaintiffs Erin Hanks, Deatra Enari, Jeffrey Anderson, Toby Earl, Shyheem Smith, Robert Baker, James Skadowski, and Michelle Pickthall (collectively, "Plaintiffs") filed a Response (ECF No. 47), and Defendant filed a Reply (ECF No. 64).

Also pending before the Court is the Motion for Partial Judgment on the Pleadings (ECF No. 74) filed by Defendant. Plaintiffs filed a Response (ECF No. 76), and Defendant filed a Reply (ECF No. 77).

For the reasons discussed below, both Defendant's Motion to Compel and Defendant's Motion for Partial Judgment on the Pleadings are **GRANTED**.

**I.      BACKGROUND**

This case arises out of alleged violations of an amendment to the Nevada Constitution setting certain minimum wage requirements for employers (the "Minimum Wage Amendment"). Plaintiffs are employees of the restaurant chain TGI Friday's, and work at several of the chain's various locations throughout Nevada. (Am. Compl. ¶ 1, ECF No. 6). Plaintiffs allege that this action "is a result of [Defendant's] failure to pay Plaintiffs and other

similarly-situated employees who are members of the Class the lawful minimum wage, because [Defendant] improperly claimed eligibility to compensate employees at a reduced minimum wage rate under Nev. Const. art. XV, § 16." (*Id.* ¶ 2).[1]

Plaintiffs filed the instant action in this Court on May 19, 2014 on behalf of themselves and a purported class of Defendant's current and former employees. *See* (Compl., ECF No. 1). Shortly thereafter, on May 23, 2014, Plaintiffs filed an Amended Complaint, alleging three claims for relief: (1) violation of Nev. Const. art. XV, § 16; (2) violation of Nev. Const. art. XV, § 16 and NAC 608.102; and (3) violation of Nev. Const. art. XV, § 16 and NAC 608.104. (Am. Compl. ¶¶ 72–83, ECF No. 6). On February 24, 2015, this Court entered an Order (ECF No. 68) dismissing counts two and three and allowing the case to proceed on count one. In the February 24, 2015 Order, the Court also denied without prejudice a motion for class certification filed by Plaintiffs for lack of evidentiary support and declined to issue an advisory opinion at Plaintiffs' request determining the applicable limitations period in this case. (Feb. 24, 2015 Order 14:1–11, ECF No. 68).

Defendant subsequently filed the present pending Motion to Compel, seeking to compel four of the eight named plaintiffs (collectively, the "Arbitration Plaintiffs")[2] to arbitrate their claims pursuant to a four-page Employment At-Will and Arbitration Agreement ("Arbitration Agreement") signed by each of the Arbitration Plaintiffs. (Mot. to Compel 1:21–2:5, ECF No.

---

[1] The Nevada Constitution provides in pertinent part:
> Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living.

Nev. Const. art. XV, § 16.

[2] The Arbitration Plaintiffs are Deatra Enari, Toby Earl, James Skadowski, and Michelle Pickthall.

42). Defendant then filed the present pending Motion for Partial Judgment on the Pleadings seeking to limit Plaintiffs' claims to a two-year statute of limitations period and exclude punitive damages. (Mot. for Judgment 2:1–3:3, ECF No. 74).

## II.     LEGAL STANDARDS

### A. Motion to Compel Arbitration

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). Courts shall place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985). Thus, the Court's "role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotations omitted)). If a district court decides that an arbitration

agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

Similarly, Nevada law also recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green,* 96 P.3d 1159, 1162 (Nev. 2002). Nevada has adopted the Uniform Arbitration Act (the "UAA"). *See generally* Nev. Rev. Stat. §38.206–.248. Under the UAA, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate." Nev. Rev. Stat. § 38.221(1)(b). Arbitration agreements are "valid, enforceable and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." Nev. Rev. Stat. § 38.219. Accordingly, like the FAA, the Court's role under the UAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* Nev. Rev. Stat. § 38.221(1)(b) ("[T]he court *shall* proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate.") (emphasis added).

**B. Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.*

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### III. DISCUSSION

#### A. Motion to Compel Arbitration

In its Motion to Compel, Defendant asserts that the Arbitration Plaintiffs have all signed a valid Arbitration Agreement requiring them to arbitrate their claims. (Mot. to Compel 1:21–2:5, ECF No. 42). The Arbitration Agreement states:

> 1.  Any claim, controversy or dispute (hereafter "claim") that I have against the Briad Restaurant Group, LLC, or the Briad Restaurant Group, LLC has against me, arising from or relating to my employment or the termination of my employment with the Briad Restaurant Group, LLC (its owners, directors, officers, managers, employees, agents, franchisors or, any company owned by or affiliated with the Briad Restaurant Group, LLC), shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association under its National Rules for the Resolution of Employment Disputes and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . .
>
> 2.  I accept and consent to binding arbitration as an alternative to civil litigation and agree to forego a trial by jury with respect to all claims covered by this Agreement.
>
> 3.  The claims covered by this Agreement include, but are not limited to:
>     - claims for wages or other compensation (including but not limited to claims for salary, bonuses, severance pay, and vacation pay);
>     . . .
>     - claims for employee benefits including health care benefits . . .;
>
> . . .
>
> I understand that I am also giving up my right to bring any claim covered by this arbitration agreement as a class action or representative action.

*See* (Enari Arbitration Agreement § II, ECF No. 42-1); (Skadowski Arbitration Agreement § II,

ECF No. 42-3); (Pickthall Arbitration Agreement § II, ECF No. 42-4); *see also* (Earl Arbitration Agreement § II, ECF No. 42-2) (containing identical quoted language except for a more detailed acknowledgment of the signer's agreement to renounce any right to bring or join a class action covered by the agreement).

Under the plain language of the Arbitration Agreement signed by the Arbitration Plaintiffs, those plaintiffs may only bring claims relating to their employment against Defendant through arbitration. Accordingly, the two issues to be resolved at this time are (1) whether the Arbitration Agreement is valid and (2) whether the Arbitration Agreement encompasses the dispute at issue. *See Intelius, Inc.*, 737 F.3d at 1261; Nev. Rev. Stat. § 38.221(1)(b).

Plaintiffs, however, do not argue that the Arbitration Agreement does not encompass the claims raised in their purported class action, nor do they assert that the Arbitration Agreement is invalid based upon any grounds for the revocation of a contract. Instead, Plaintiffs' only argument against applying the Arbitration Agreement to the Arbitration Plaintiffs' claims is that the Arbitration Agreement is "void for illegality" as applied in this case because the Minimum Wage Amendment "expressly prohibits the waiver of its provision by an individual employee in an agreement with an employer." (Resp. to Mot. to Compel 4:25–27, ECF No. 47). Specifically, the Minimum Wage Amendment states both that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer" and that "[a]n employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section." Nev. Const. art. XV, § 16(B). Plaintiffs argue that reading these two phrases together necessitates a finding that the claims granted to employees under the Minimum Wage Amendment cannot be compelled into arbitration by an agreement between an employer and its employees. (Resp. to Mot. to Compel 4:25–8:1, ECF No. 47). This argument fails for two reasons.

First, the Minimum Wage Amendment's prohibition on an employee waiving their rights by agreement does not prohibit the employee and employer from agreeing on the forum that will adjudicate the rights provided under the amendment. The Supreme Court of Nevada has long recognized that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *D.R. Horton, Inc.*, 96 P.3d at 1164 (quoting *Kindred v. Second Judicial Dist. Court ex rel. Cnty. of Washoe*, 996 P.2d 903, 909 (Nev. 2000)). The Minimum Wage Amendment's prohibition is against waiving "provisions of this section" such as the substantive right to a minimum wage as detailed in the amendment. No provision of the Minimum Wage Amendment, however, requires claims to be brought in a court of law. The Minimum Wage Amendment merely states that "[a]n employee claiming a violation of this section *may* bring an action in the courts of this State." Nev. Const. art. XV, § 16(B) (emphasis added). It provides that Nevada state courts will enforce an employee's rights, but it does not limit the forum exclusively to those courts.

This reading of the Minimum Wage Amendment is further supported by analogous cases involving interpretations of other laws such as the Fair Labor Standards Act (the "FLSA") or Title VII of the Civil Rights Act of 1964 ("Title VII"). For example, the FLSA prohibits a private agreement from altering an employee's right to a minimum wage and overtime. *See Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). However, every one of the court of appeals that has considered whether the FLSA establishes a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually has concluded that arbitration agreements are enforceable in FLSA cases. *See, e.g.*, *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319–20 (9th Cir. 1996); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir.

2013); *Caley v. Gulf Stream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Carter v. Countrywide Credit Indus, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002)).  Likewise, after the Supreme Court's decision in *Gilmer*,[3] the circuit courts and the Supreme Court of Nevada have all held that the provision of a right to a jury trial in the 1991 amendment to Title VII "presents no bar to compulsory arbitration." *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003); *see, e.g.*, *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 205 (2d Cir. 1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 11 (1st Cir. 1999); *see also Kindred*, 996 P.2d at 907 ("[T]he language of Title VII does not expressly preclude arbitration."). Accordingly, the Minimum Wage Amendment's prohibition on waiving the substantive rights granted within it does not prohibit the enforcement of those rights through arbitration.

Second, even if the language of the Minimum Wage Amendment expressly prohibited compulsory arbitration for claims arising from it, that prohibition would be preempted by FAA and, as a result, would be invalid.  "Pursuant to the Supremacy Clause of the United States Constitution, 'the FAA preempts contrary state law.'" *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) (quoting *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013)).  Thus, "[i]n enacting the FAA, Congress 'withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" *Id.* (quoting *Southland Corp.*, 465 U.S. at 10).  As a result, courts are "prohibited from applying any state statute that invalidates an arbitration agreement [or] 'prohibits outright the arbitration of a particular type of claim'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011)) (citation omitted).

Plaintiffs argue that the Minimum Wage Amendment prohibits outright the arbitration of

---

[3] In *Gilmer*, the Supreme Court held that compulsory arbitration clauses could be enforced in claims arising under the ADEA even though that statute explicitly provides a right to jury trials. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–29 (1991).

any of the claims arising under it. If that were true, it would directly conflict with the FAA and Congress's declared national policy favoring arbitration. Therefore, even if Plaintiffs' interpretation of the Minimum Wage Amendment were correct, that portion of the amendment is preempted by the FAA. *See Concepcion*, 131 S. Ct. at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). Accordingly, the Court finds that the Arbitration Agreement is valid and encompasses the Arbitration Plaintiffs' claims against Defendant under the Minimum Wage Amendment. Each of the Arbitration Plaintiffs are dismissed from this suit and ordered to arbitrate their claims against Defendant in accordance with their respective versions of the Arbitration Agreement.[4]

**B. Motion for Partial Judgment on the Pleadings**

In its Motion for Partial Judgment on the Pleadings, Defendant asserts that Plaintiffs' claims "extend beyond the applicable statute of limitations and, additionally, seek [punitive] damages which are unavailable to parties alleging violations of Nevada's minimum wage." (Mot. for Judgment 2:3–6, ECF No. 74). More specifically, Defendant asserts that because the Minimum Wage Amendment fails to provide any limitations period for claims arising under it, Nevada Revised Statute § 608.260—which limits minimum wage claims to two years— provides the applicable statute of limitation in this case. (*Id.* 4:15–5:19); *see* Nev. Rev. Stat.

---

[4] Defendant has filed a Motion for Summary Judgment as to Plaintiff Deatra Enari (ECF No. 78), requesting summary judgment solely on her claims against it. Because Ms. Enari is a member of the Arbitration Plaintiffs whose claims have now been dismissed from this action. Defendant's Motion for Summary Judgment as to Plaintiff Deatra Enari is **DENIED as moot**.

Additionally, the parties have recently filed a Motion to Disqualify (ECF No. 80) and a Motion to Certify Class (ECF No. 81). In the Motion to Disqualify, Defendant seeks to disqualify all of the Plaintiffs as inadequate class representatives, (Mot. to Disqualify 1:21–26, ECF No. 80), and in the Motion to Certify Class, Plaintiffs seek to certify a class in this action which includes all of the Plaintiffs as class representatives. (Mot. to Certify 3:9–5:27, ECF No. 81). Because half of the individuals sought be certified or disqualified as class representatives have now been dismissed from this action, the Motion to Disqualify and Motion to Certify Class are **DENIED without prejudice** so that the parties may, if appropriate, refile these motions reflecting their dismissals.

608.260. Additionally, Defendant asserts that because the Minimum Wage Amendment does not explicitly provide punitive damages and, unless otherwise provided for by law, punitive damages are only available for tort claims in Nevada, punitive damages are unavailable to Plaintiffs for their claims premised on violations of the Minimum Wage Amendment. (Mot. for Judgment 10:14–13:22, ECF No. 74).

### 1. Section 608.260's two-year limitations period applies to claims arising under the Minimum Wage Amendment.

Prior to the passage of the Minimum Wage Amendment, Nevada's minimum wage law was set by statute. *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518, 519–20 (2014), *reh'g denied* (Sept. 24, 2014); *see* Nev. Rev. Stat. §§ 608.250–.290. Under the earlier statutory scheme, an employee's claims against an employer to recover the difference between the amount paid to the employee and the amount of the minimum wage was limited to two years. *See* Nev. Rev. Stat. § 608.260. The Minimum Wage Amendment, however, does not explicitly provide a limitations period for claims arising under it. *See* Nev. Const. art. XV, § 16.

In *Thomas v. Nevada Yellow Cab Corp.*, the Supreme Court of Nevada explained that the Nevada Constitution controls over any conflicting statutory provisions and that a statute will be construed to be in harmony with the constitution, if reasonably possible. 327 P.3d at 521. Therefore, "when a statute 'is irreconcilably repugnant' to a constitutional amendment, the statute is deemed to have been impliedly repealed by the amendment." *Id.* However, "[t]he presumption is against implied repeal unless the enactment conflicts with existing law to the extent that both cannot logically coexist." *Id.*

Here, the two-year statute of limitations period found in section 608.260 does not necessarily and directly conflict with the Minimum Wage Amendment, making the two laws irreconcilably repugnant. Rather, the statutory provision can be construed in harmony with the constitution because the constitution is silent as to the appropriate limitations period.

Therefore, the Court finds that the Minimum Wage Amendment's silence does not impliedly repeal the two-year statute of limitations found in section 608.260 and that the two-year limitations period applies to minimum wage claims brought under the amendment. *See id.* at 522 (finding that because the Minimum Wage Amendment contained enumerated exceptions that did not include taxicab drivers, it superseded the taxicab driver exception found in section 608.250(2)); *see also Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955 (Nev. 2014), *reh'g denied* (Jan. 22, 2015) ("[T]he Minimum Wage Amendment supplants that of our statutory minimum wage laws *to some extent* . . . .") (emphasis added); Nev. Att'y Gen. Op. No. 2005-04 at 15–21 (March 2, 2005) (explaining that the extent of the Minimum Wage Amendment's preemption of the statutory framework for minimum wage claims "depends on the extent of the conflict" and advising that some provisions that do not directly conflict, such as the civil and criminal enforcement provisions, would only be "modified" by the amendment).

This finding is in accord with several courts in the District of Nevada that have already addressed this question and found that the two-year limitations period in section 608.260 applied to claims arising under the Minimum Wage Amendment. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 2819 (2014) (affirming the district court's application of the two-year limitations period in section 608.260 for failing to properly raise the issue on appeal); *see also Tyus v. Wendy's of Las Vegas, Inc.*, No. 214-CV-00729-GMN-VCF, 2015 WL 1137734, at *2–3 (D. Nev. Mar. 13, 2015); *McDonagh v. Harrah's Las Vegas, Inc.*, No. 2:13-cv-01744-JCM-CWH, 2014 WL 2742874, at *4 (D. Nev. June 17, 2014). *But see Sheffer v. U.S. Airways, Inc.*, No. 3:15-CV-00204-RCJ, 2015 WL 3458192, at *2–3 (D. Nev. June 1, 2015) (finding without addressing the prior cases applying the limitation period in section 608.260, including an order written by the same judge, that the general three-year limitations period for statutory causes of action in Nevada Revised Statute §

11.190(3)(a) applied to claims brought under the Minimum Wage Amendment). Likewise, a majority of the decisions by state trial courts have also held section 608.260's two-year limitations period to be appropriate for claims arising under the Minimum Wage Amendment. *See* (*Golden v. Sun Cab Inc.*, Ex. A to Mot. for Judgment, ECF No. 74-1); (*Perry v. Terrible Herbst, Inc.*, Ex. B to Mot. for Judgment, ECF No. 74-2); (*Williams v. Claim Jumper Acquisition Co., LLC*, Ex. C to Mot. for Judgment, ECF No. 74-3). *But see Diaz et al. v. MDC Restaurants*, A-14-701633 (Feb. 3, 2015) (finding that section 608.260 does not apply to claims brought under the Minimum Wage Amendment). Therefore, the majority of state and federal courts addressing the issue have agreed with this Court's decision and applied the two-year limitations period in section 608.260 to claims arising under the Minimum Wage Amendment. Accordingly, because this Court finds that the limitations period in section 608.260 applies to Plaintiffs' claims, all wage claims accruing more than two years before Plaintiffs filed suit are dismissed with prejudice.

### 2. Punitive damages are not available for claims arising under the Minimum Wage Amendment.

Plaintiffs' sole surviving claim is for unpaid minimum wages under the Minimum Wage Amendment. *See* (Feb. 24, 2015 Order, ECF No. 68) (dismissing all claims except for violations of the Minimum Wage Amendment). Defendant urges the Court to find that Nevada courts would adopt one or both of the rationales articulated by the California Court of Appeals in *Brewer v. Premier Golf Properties* for finding that punitive damages are unavailable to plaintiffs claiming violations of minimum wage laws. 86 Cal. Rptr. 3d 225 (Cal. Ct. App. 2008).[5] In *Brewer*, the court held first that the California Labor Code's minimum wage requirements are new rights created by statute that did not exist under common law; therefore,

---

[5] "Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004).

under the "new right-exclusive remedy" rule, claims premised on violations of the statutory rights are limited to only those remedies expressly provided under the statute—which did not include punitive damages. *See id.* at 232–34.  The court went on to find that notwithstanding the "new right-exclusive remedy" rule, punitive damages would still be unavailable to the plaintiff "because punitive damages are ordinarily limited to actions 'for the breach of an obligation not arising from contract,' and [plaintiff]'s claims for unpaid wages and unprovided meal/rest breaks arise from rights based on her employment contract." *Id.* at 235 (citing Cal. Civ. Code § 3294).

The Court finds that both of the rationales for denying punitive damages in *Brewer* are equally applicable to claims arising under Nevada's Minimum Wage Amendment.  Like California, Nevada courts have long subscribed to the rule that "[w]here a statute gives a new right and prescribes a particular remedy, such remedy must be strictly pursued, and is exclusive of any other." *State v. Yellow Jacket Silver Min. Co.*, 14 Nev. 220, 225 (1879); *see also Builders Ass'n of N. Nevada v. City of Reno*, 776 P.2d 1234, 1235 (Nev. 1989) ("If a statute expressly provides a remedy, courts should be cautious in reading other remedies into the statute.").  The right to receive a minimum wage arises from legislative mandate and did not exist under common law. *See Brewer*, 86 Cal. Rptr. 3d at 232 ("Labor Code statutes regulating pay stubs (§ 226) and minimum wages (§ 1197.1) create new rights and obligations not previously existing in the common law."); *cf. MGM Grand Hotel-Reno, Inc. v. Insley*, 728 P.2d 821, 824 (Nev. 1986) (noting that the "obligation to pay compensation benefits and the right to receive them exists as a matter of statute independent of any right established by contract," and that such liability is "created" by statute).  Accordingly, the remedies available for violating minimum wage laws are limited to those expressly provided by statute and constitutional amendment.

The Minimum Wage Amendment states: "An employee claiming violation of this

section . . . shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief." Nev. Const. art. XV, § 16(B).[6]  However, there is no provision for punitive damages or any other type of damages aimed at punishing an employer for noncompliance. *See Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304–05 (Nev. 1993) ("Punitive damages are not awarded as a matter of right to an injured litigant, but are awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct."). Instead, the Minimum Wage Amendment's language explicitly provides only for damages "appropriate to remedy any violation." Nev. Const. art. XV, § 16(B). Therefore, because damages for violations of the Minimum Wage Amendment are limited to those expressly provided by the amendment and there is no provision in the amendment for punitive damages, Plaintiffs cannot recover punitive damages for their claims.[7]

Additionally, even if the "new right-exclusive remedy" rule did not apply, punitive damages would still be unavailable for Plaintiffs' claims. Nevada law permits the awarding of punitive damages for tort claims where the defendant "has been guilty of oppression, fraud or malice," *see* Nev. Rev. Stat. § 42.005, or where such damages are explicitly provided by statute. *See, e.g.*, Nev. Rev. Stat. § 42.010 ("In an action for the breach of an obligation, where

---

[6] In addition to the compensatory damages, the Minimum Wage Amendment also provides: "An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs." Nev. Const. art. XV, § 16(B).

[7] The Court notes, however, that under the old statutory minimum wage scheme, "the Labor Commissioner may impose against [an employer] an administrative penalty of not more than $5,000 for each violation." Nev. Rev. Stat. § 608.290.2. Accordingly, because there is no provision of the Minimum Wage Amendment addressing the application of penalties or fines for violations, the Labor Commissioner may impose an administrative penalty of up to $5,000 for violators of the Minimum Wage Amendment. *See supra* Part III.B.1. The ability of the Labor Commissioner to impose such a penalty alleviates Plaintiffs' concern that punitive damages are necessary for minimum wage claims in order to discourage employers from willfully violating the Minimum Wage Amendment. *See* (Resp. to Mot. for Judgment n.3, ECF No. 76).

the defendant caused an injury by the operation of a motor vehicle . . . after willfully consuming or using alcohol or another substance, knowing that the defendant would thereafter operate the motor vehicle, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant."). However, "the award of punitive damages cannot be based upon a cause of action sounding solely in contract." *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 703 (Nev. 2006); *see also* Nev. Rev. Stat. § 42.005 ("[I]n an action for the breach of an obligation *not arising from contract*, . . . the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant.") (emphasis added).

Though Plaintiffs' minimum wage claims arise from Defendant's alleged failure to pay a statutory obligation, "when a statute imposes additional obligations on an underlying contractual relationship, a breach of the statutory obligation is a breach of contract that will not support tort damages beyond those contained in the statute." *See Brewer*, 86 Cal. Rptr. 3d at 235; *see also Camino Properties, LLC v. Ins. Co. of the W.*, No. 2:13-CV-02262-APG, 2015 WL 2225945, at *3 (D. Nev. May 12, 2015) ("ICW cannot be right that liabilities arising from a contract, where the contract is required by statute, is a 'liability by statute.' . . . Even though insurance contracts exist because a statute requires drivers to buy them, claims for breaches of the insurance policy are governed by the six-year limitations period for contracts."); *cf. Descutner v. Newmont USA Ltd.*, No. 3:12-CV-00371-RCJ, 2012 WL 5387703, at *2 (D. Nev. Nov. 1, 2012)  (stating that the Nevada statute concerning overtime wages, section 608.140, "does not imply a private right of action to sue under the labor code, but only to sue in contract").  Therefore, because claims for violations of the Minimum Wage Amendment arise from an underlying contractual employer-employee relationship, such claims do not entitle a plaintiff to punitive damages.  Accordingly, Plaintiffs cannot seek punitive damages based

solely on a claim for violations of the Minimum Wage Amendment, and their claims for punitive damages are dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel (ECF No. 42) is **GRANTED**. Plaintiffs Deatra Enari, Toby Earl, James Skadowski, and Michelle Pickthall are dismissed from this action and ordered to arbitrate their claims in accordance with their respective versions of the Arbitration Agreement.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 74) is **GRANTED**. Plaintiffs' punitive damages request and all wage claims accruing more than two years before Plaintiffs filed suit are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff Deatra Enari (ECF No. 78) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Disqualify (ECF No. 80) and Plaintiffs' Motion to Certify Class (ECF No. 81) are **DENIED without prejudice**. The parties may refile their respective motions after adjusting them to reflect the status of the present action following this Order.

**DATED** this 27th day of July, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge