# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ERIN HANKS, *et al.*,

        Plaintiffs,

vs.

BRIAD RESTAURANT GROUP, L.L.C.,

        Defendant.

Case No.: 2:14-cv-00786-GMN-PAL

**ORDER**

Pending before the Court is the Renewed Motion for Summary Judgment, (ECF No. 128), filed by Defendant Briad Restaurant Group, LLC ("Defendant"). Plaintiff Jeffrey Anderson ("Anderson") filed a Response, (ECF No. 142), and Defendant filed a Reply, (ECF No. 147). For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment.[1]

## I.   BACKGROUND

This case arises out of alleged violations of Nevada's Minimum Wage Amendment, Nev. Const. art. XV, § 16 (the "MWA"). Plaintiffs are employees at various locations throughout Clark County, Nevada, of the fast food restaurant chain, TGI Friday's. (Am. Compl. ¶ 14–21, ECF No. 6). Plaintiffs allege that this action "is a result of [Defendant's] failure to pay Plaintiffs and other similarly-situated employees who are members of the Class the lawful minimum wage, [sic] because [Defendant] improperly claimed, eligibility to compensate employees at a reduced minimum wage rate under [the MWA]." (*Id.* ¶ 2).

---

1 Also pending before the Court is the Renewed Motion to Certify Class, (ECF No. 127), filed by Plaintiffs Erin Hanks and Jeffrey Anderson (collectively "Plaintiffs"). Defendant filed a Response, (ECF No. 143), and Plaintiffs filed a Reply, (ECF No. 146). Because the ruling in this Order affects the named parties seeking class certification in Plaintiffs' Motion to Certify Class, (ECF No. 127), the Court **DENIES as moot** Plaintiffs' Motion to Certify Class with leave to refile.

For example, Anderson worked as a server at TGI Friday's restaurants owned and operated by Defendant between July 2009 and March 2013 and he allegedly earned an hourly wage below the upper-tier hourly minimum wage under the MWA. (*Id*. ¶¶ 16, 36). Moreover, Defendant offered Anderson a health insurance plan, but Anderson declined the insurance coverage. (*Id*. ¶ 37). As a result, Plaintiffs allege that Defendant "does not provide, offer," or "maintain qualifying health insurance plan benefits for the benefit of Plaintiffs and members of the Class[,]" and therefore "Defendant is not, and has not been, eligible to pay Plaintiffs and members of the Class at the reduced minimum wage rate." (*Id*. ¶¶ 12–13).

Plaintiffs filed the instant action on May 19, 2014. (*See* Compl., ECF No. 1). Shortly thereafter, on May 23, 2014, Plaintiffs filed an Amended Complaint. (*See* Am. Compl.). Subsequently, Defendant filed a Motion to Dismiss, seeking dismissal of Plaintiffs' Amended Complaint. (Mot. to Dismiss, ECF No. 14). The Court dismissed Plaintiffs' second and third claims for relief with prejudice, and denied Defendant's Motion as to Plaintiffs' first claim for relief. (Feb. 24, 2015 Order, ECF No. 68).

On September 15, 2015, in response to Anderson's Motion for Partial Summary Judgment, (ECF No. 114), the Court certified the following question to the Nevada Supreme Court: "Whether an employee must actually enroll in health benefits offered by an employer before the employer may pay that employee at the lower-tier wage under the [MWA]." (Order for Certification of Question of Law, ECF No. 119). The Nevada Supreme Court answered the question in *MDC Restaurants, LLC v. Eighth Judicial District Court*, 383 P.3d 262 (Nev. 2016), by holding that "under the MWA, health benefits need only be offered or made available for the employer to pay the lower-tier wage." 383 P.3d at 266.

Subsequently, the parties filed a Joint Motion to Certify an additional question to the Nevada Supreme Court. (ECF No. 130). The parties specifically sought to certify the following question: "What constitutes a qualified health insurance plan under the MWA?" (Joint Mot. to

Certify 3:13). The Court denied the parties' Motion finding that the Nevada Supreme Court had answered the proposed question in *Western Cab Company v. Eighth Judicial District Court*, 390 P.3d 662 (Nev. 2017). *See* 390 P.3d at 671 ("The MWA defines 'health benefits' as 'making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer.'").

In the instant Motion, Defendant seeks summary judgment on only Anderson's remaining first cause of action because, pursuant to the Nevada Supreme Court's decisions, "Anderson was offered qualifying health insurance plans and was paid at least $7.25 per hour." (*See* Renewed Mot. for Summ. J. ("MSJ") 2:21, ECF No 128).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

## III. DISCUSSION

Defendant seeks summary judgment on Anderson's sole surviving claim for unpaid minimum wages under the MWA because "the health insurance [offered to Anderson] is and was proper health insurance under the MWA and supporting regulations." (MSJ 2:11–12). Specifically, Defendant states that under the MWA and supporting regulation, four requirements must be met for the health insurance to be adequate: (1) the health insurance must cover those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 if such expenses had been borne directly by the employee; (2) the health insurance must be made available to the employee and any dependents of the employee; (3) the health insurance must not have a waiting period that exceeds more than six months; and (4) the health insurance must cost the employee no more than ten percent of the employee's gross taxable income attributable to the employer. (*Id*. 2:13–19); *see* Nev. Const. art. XV § 16; Nev. Admin. Code ("NAC") 608.102. Defendant claims that the "health insurance plans offered to Plaintiff Anderson satisfies [sic] all four." (MSJ 2:20–21).

Anderson responds that NAC 608.102 "is an unworkable standard" because "the Court would end up interpreting not the Nevada Constitution itself, but rather the [NAC] 608.10[2] language instead." (Resp. 10:11–12, ECF No. 142). In lieu, Anderson recommends the Court follow "the provisions of [NRS] Chapters 608, 698A and 698B." (*Id*. 10:24). Anderson continues, however, that regardless of the rationale the Court chooses to use, the plans are "not qualified health insurance under the [MWA] in any case." (*Id*. 2:16–17). The Court will first address Anderson's arguments against using NAC 608.102 as the standard for the MWA.

1    The MWA guarantees to each Nevada employee a base wage. *See* Nev. Const. art. 15, §

2  16(A). Effective in 2006, the lower-tier wage was originally $5.15 per hour if the employer

3  provided health benefits, and the upper-tier wage was $6.15 if the employer did not provide

4  health benefits. *Id*. When the instant action was filed, the lower-tier wage was $7.25, and the

5  upper-tier wage was $8.25. (2012–2015 Nevada Lab. Commissioner Bulls. Announcing

6  Minimum Wage, Ex. 1 to MSJ, ECF No. 128-2).

7    After the MWA was implemented, differing interpretations arose as to what "provides"

8  required, with some asserting that to pay the lower rate, the employer must actually enroll

9  employees in a benefits plan, and others arguing that the employer must merely offer benefits

10  to employees. (*See, e.g.*, Anderson's MSJ, ECF No. 114). In 2007, the Office of the Labor

11  Commissioner adopted administrative code regulations addressing this question and provided

12  that "[t]o qualify to pay an employee the [lower-tier] minimum wage . . . [t]he employer must

13  offer a health insurance plan." NAC 608.102(1). Further, NAC 608.102(2) clarified that "[t]he

14  health insurance plan must be made available to the employee and any dependents of the

15  employee."

16    Although Anderson argues that NAC 608.102 is "unworkable," it is the standard by

17  which the Nevada Supreme Court interprets the MWA. *See*, *e.g.*, *MDC Restaurants, LLC v.*

18  *Eighth Judicial Dist. Court*, 383 P.3d 262, 268 (Nev. 2016) ("In this case, with regard to

19  whether employers must 'offer' or 'enroll' employees in health benefit plans to pay the lower-

20  tier wage, our holding is consistent with the Labor Commissioner's promulgations, *see* NAC

21  608.102 (2007) (providing that an employer must 'offer' health benefits), and the language of

22  the MWA is plain: employers need only offer health benefits to pay the lower-tier wage. Thus,

23  we announce no new principle of law as to this issue, and its resolution could clearly have been

24  foreshadowed."); *W. Cab Co. v. Eighth Judicial Dist. Court of State in & for Cty. of Clark*, 390

P.3d 662, 670–71 (Nev. 2017) (defining and interpreting the term "health benefits" pursuant to NAC 608.102(1)). As such, the Court will consider the MWA in concert with NAC 608.102.

According to NAC 608.102, to qualify to pay an employee the minimum wage, an employer must meet each of the following requirements: (1) the employer must offer a health insurance plan that covers those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto; (2) the health insurance plan must be made available to the employee and any dependents of the employee; (3) the waiting period for the health insurance plan is not more than six months; and (4) the share of the cost of the premium for the health insurance plan paid by the employee must not exceed ten percent of the gross taxable income of the employee attributable to the employer under the Internal Revenue Code. NAC 608.102. The Court will address the four factors in turn.

### 1. The Health Insurance Must Cover Those Categories of Health Care Expenses that are Generally Deductible.

Defendant argues that 26 U.S.C. § 213 governs this factor as it "sets forth two categories of health care that are generally deductible: (1) medical care; and (2) medicine or drugs that are a prescribed drug or insulin." 26 U.S.C. § 213 (a)–(b); (MSJ 7:6–7). Moreover, Defendant asserts that Treasury Regulation § 1.213(e) clarifies § 213 by setting forth specific examples of appropriate lodging expenses and medical care such as, *inter alia*, hospital services, nursing services, medical, laboratory, surgical, and dental. 26 CFR 1.213-1(e); (MSJ 8:13–17). Defendant contends that if a health insurance plan covers these things, "then it covers categories of health care expenses that are generally deductible by an employee on his individual federal income tax return," thereby meeting this first factor. (MSJ 8:19–21).

In response, Anderson states that § 213 does not describe any categories at all, but "it establishes the tax deduction for expenses paid for medical care generally." (Resp. 14:19–20). Anderson continues that "[t]here are, in fact, dozens of categories of health care expenses that

are deductible" and states that "Defendant's [p]lan[s] do[ ] not provide coverage for the range of categories of healthcare expenses that individuals could deduct on their federal tax returns." (*Id*. 14:24, 15:3–4). Further, Anderson argues that "Defendant does not get to select which of these categories its [p]lan[s] can 'cover,' and which they need not" because Anderson asserts that NAC 608.102 requires "*those* categories of health care expenses." (*Id*. 15:5–8). Based on these assertions, Anderson seemingly argues that "those" implies "all."

When interpreting a statute, legislative intent "is the controlling factor." *Robert E. v. Justice Court*, 664 P.2d 957, 959 (Nev. 1983). The starting point for determining legislative intent is the statute's plain meaning; when a statute "is clear on its face, a court can not go beyond the statute in determining legislative intent." *Id*.; *see also State v. Catanio*, 102 P.3d 588, 590 (2004) ("We must attribute the plain meaning to a statute that is not ambiguous."); *Arguello v. Sunset Station, Inc*., 252 P.3d 206, 209 (Nev. 2011).

The text of NAC 608.102(1)(a) states that an employer must offer a health insurance plan that "[c]overs *those* categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto, if such expenses had been borne directly by the employee." NAC 608.102(1)(a) (emphasis added).

In this section, "those" does not imply "all," but instead narrows what qualifies as health care expenses; "those" defines the specific categories that are generally deductible on a person's federal income tax pursuant to § 213, and therefore *can* be covered by employers' health plans. The word "those" does not indicate that every service or health care expense that is deductible must be included, but rather, that what is included has to be deductible. As such, the Court holds that in regards to the word "those," the statute is clear on its face and Anderson's alleged interpretation of the word is not reasonable to render the plain meaning ambiguous. Therefore, in order for the health insurance to be adequate under NAC 608.102,

the categories of health care expenses included must be generally deductible pursuant to § 213, but the categories need not include every type of health expense generally deductible under § 213.

Here, Defendant offered its Nevada minimum wage hourly employees the CIGNA Starbridge Limited-Benefits Plans (the "plans") in 2012 and 2013. (Resp. 16:1–2); (s*ee* Anderson Dep. 83:10–85:1, Ex. 2 to MSJ, ECF No. 128-3); (*see also* Coutt Decl. ¶¶ 4–5, Ex. 3 to MSJ, ECF No. 128-4). In each of these plans, the expenses that were covered fell under "medical care" pursuant to § 213, such as doctor office visits, outpatient care, non-emergency care in emergency room, and inpatient care.[2] *See* 26 U.S.C. § 213; 26 CFR 1.213-1. Because Defendant's plans include "those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213," Defendant's plans meet NAC 608.102(1)(a). *See* NAC 608.102(1)(a). Accordingly, Defendant's plans are sufficient under the first factor.

### 2. The Health Insurance Must Be Made Available to the Employee and Any Dependents.

The text of NAC 608.102(2) states that "[t]he health insurance plan must be made available to the employee and any dependents of the employee." NAC 608.102(2). Defendant states that "[a]s evidenced by the summary plan descriptions, price charts, and brochures, all health insurance plans made available to . . . hourly employees earning below $8.25 per hour during the 2012 to 2013 time period[ ] provided coverage to those employees' dependents." (MSJ 9:25–10:1). Indeed, the health insurance plans offered coverage to dependents. (*See* Starbridge Limited-Benefit Health Plan Summary Plan (2010-2013) at 14, Ex. 5 to MSJ, ECF No. 128-6) (setting forth who is considered a dependent for dependent coverage); (*see also*

---

2 For an inclusive list of what was covered, *see* (Starbridge Limited-Benefit Health Plan Summary Plan (2010-2013) at 6–9, Ex. 5 to MSJ, ECF No. 128-6).

Starbridge Limited-Benefit Health Plan Brochure at 5, Ex. 6 to MSJ, ECF No. 128-7) (showing rates for spouse, child, and family coverage). Moreover, Anderson does not dispute that Defendant's plans meet this factor. As such, Defendant's plans meet the second requirement of NAC 608.102.

### 3. The Waiting Period for the Health Insurance Plan is Not More Than Six Months.

NAC 608.102(2)(b) requires that "[t]he waiting period for the health insurance plan is not more than 6 months." The plans had less than six-month waiting periods because the "effective date of coverage was less than 60 days." (MSJ 10:15–16); (*see* Starbridge Limited-Benefit Health Plan Summary Plan (2010-2013) at 5, Ex. 5 to MSJ, ECF No. 128-6) ("Your coverage will begin the first day of the month following the date you enroll providing you enroll within 45 days of your date of hire."). Anderson does not dispute this factor, and based on the evidence, the Court finds it is met.

### 4. The Share of the Cost of the Premium for the Health Insurance Plan Paid by the Employee Must Not Exceed Ten Percent of the Gross Taxable Income of the Employee.

The MWA provides the following: "Offering health benefits . . . shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Moreover, under the plain language of this constitutional provision, the MWA's ten-percent cost cap pertains to compensation and wages paid by the employer to the employee. *See MDC Restaurants, LLC*, 383 P.3d at 267.

Here, Defendant asserts that Anderson "met this 10% requirement" because "the premium cost of the insurance available to Plaintiff Anderson did not exceed 10% of his gross taxable income." (MSJ 11:2–23); (*see* Anderson Payment Detail Listing for 2013, Ex. 10 to

MSJ, ECF No. 128-11); (*see also* Anderson 2012 W-2, Ex. 8 to MSJ, ECF No. 128-9); (*see also* Anderson 2013 W-2, Ex. 9 to MSJ, ECF No. 128-10). Defendant states that as a result, it "is entitled to a judgment as a matter of law that the plans meet the cost requirement for health insurance under the MWA." (MSJ 11:23–24). Anderson does not address this factor, and pursuant to Defendant's evidence, the Court finds that this factor is met.

Accordingly, because Defendant's plans meet all four of the factors provided in the MWA and NAC 608.102 for defining what constitutes health insurance, the Court grants summary judgment in Defendant's favor.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion for Summary Judgment, (ECF No. 128), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion to Certify Class, (ECF No. 127), is **DENIED as moot** with leave to refile.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this \_\_29\_\_ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge