**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JEFFREY ANDERSEN, an individual, on behalf of himself and all similarly situated individuals,

        Plaintiff,

vs.

BRIAD RESTAURANT GROUP, LLC,

        Defendant.

Case No.: 2:14-cv-00786-GMN-BNW

**ORDER**

Pending before the Court is the Second Renewed Motion for Summary Judgment, (ECF No. 181), filed by Defendant Briad Restaurant Group, LLC ("Defendant"). Plaintiff Jeffrey Andersen ("Plaintiff") filed a Response, (ECF No. 188), and Defendant filed a Reply, (ECF No. 191). Also pending before the Court is Plaintiff's Renewed Motion to Certify Class, (ECF No. 179), to which Defendant filed a Response, (ECF No. 186), and Plaintiff filed a Reply, (ECF No. 187).

For the reasons discussed herein, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion to Certify Class is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

This case arises out of Defendant's alleged violations of Nevada's Minimum Wage Amendment, Nev. Const. art. XV, § 16 (the "MWA"). During all relevant times, Defendant owned and operated eight TGI Friday's restaurants (collectively the "Restaurants") in Nevada. (Mot. Certify 5:14–16, ECF No. 179). Plaintiff Andersen worked as a server at one of Defendant's restaurants between July 2009 and March 2013. (Am. Compl. ¶¶ 16, ECF No. 6).

Plaintiff brings this action individually and on behalf of other similarly situated employees of the Restaurants for whom Defendant allegedly failed to offer MWA-compliant health benefits plans. (*Id.* ¶¶ 2, 36–39, 64); (Mot. Certify 5:10–12).

On September 29, 2017, the Court granted Defendant summary judgment on Plaintiff's wage-violation claim, reasoning that Defendant's health plan was consistent with the MWA and its corresponding regulations. (*See* Order 11:6–8, ECF No. 153). The Court based its conclusion on two decisions in which the Nevada Supreme Court stated the MWA is governed by the standards set forth in Nevada Administrative Code ("NAC") 608.102. (*Id.* 6:16–7:12) (citing *MDC Rests., LLC v. Eighth Judicial Dist. Court*, 383 P.3d 262, 268 (Nev. 2016) ("*MDC I*"); *W. Cab Co. v. Eighth Judicial Dist. Court*, 390 P.3d 662, 670–71 (Nev. 2017) ("*Western Cab*")). Applying NAC 608.102, this Court found that Defendant's health-benefits plan met the four-factor test for defining health insurance. (*Id.* 7:13–11:8). Consequently, the Court denied as moot Plaintiff's motion to certify class and instructed the clerk of court to enter judgment in favor of Defendant. (*Id.* 11:10–14); (*see also* Clerk's J., ECF No. 154).

Plaintiff appealed the Court's decision, (ECF No. 161), and during the appeal's pendency, the Nevada Supreme Court issued its decision in *MDC Rests., LLC v. Eighth Jud. Dist. Court,* 419 P.3d 148 (Nev. 2018) ("*MDC II*"). In *MDC II*, the Supreme Court addressed "whether there is some minimum quality or substance of health insurance that an employer must provide for the employer to pay the lower-tier minimum wage under the MWA." *See MDC II*, 419 P.3d at 154. To answer this question, the *MDC II* Court looked to the "text, history, and purpose of the MWA," and expressly stated that "NAC 608.102 is an unworkable standard for making such a determination." *Id.* Declining to stray from the "simple meaning found within the text and purpose of the MWA," the Nevada Supreme Court held:

> [A]n employer is qualified to pay the lower-tier minimum wage to an employee if the employer offers a benefit to the employee in the form of health insurance of a value greater than or equal to the

> wage of an additional dollar per hour, and covers "the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Nev. Const. art. 15, § 16. An employer who pays the lower-tier minimum wage will have the burden of showing that it provided the employee with a benefit in the form of health insurance equal to a value of at least an additional dollar per hour in wages. If an employer cannot offer such insurance to an employee, the employer must pay the employee the upper-tier minimum wage.

*Id.* at 155–56. In light of this holding, the Ninth Circuit Court of Appeals remanded this case for consideration. (Mem. Op., ECF No. 172). Thereafter, Plaintiff filed the instant renewed Motion to Certify and Defendant filed its second renewed Motion for Summary Judgment.

The Court begins with Defendant's Motion for Summary Judgment, followed by Plaintiff's Motion to Certify.

## II. **MOTION FOR SUMMARY JUDGMENT**

### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

**B. Discussion**

Defendant's Motion for Summary Judgment presents a purely legal issue: whether the *MDC II* decision applies retroactively. (Def.'s MSJ 5:2–15, ECF No. 181). Defendant argues that, because *MDC II* overruled *Western Cab*—a decision which Defendant claims it modeled it health benefits practices after—the Nevada Supreme Court would hold that equitable considerations dictate that *MDC II* applies only prospectively. (*Id.* 6:16–24). Therefore, Defendant contends that *Western Cab* supplies the relevant legal standard, and the Court's prior Order remains on solid ground. (*Id.*).

As a threshold matter, the Court notes that whether *MDC II* is limited to prospective application is a question of first impression. Because there is no controlling law on point, "this Court must predict how the Nevada Supreme Court would decide the question." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008); *see also Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

The Court predicts that the Nevada Supreme Court would apply *MDC II* retroactively. The Court is persuaded by the Nevada Supreme Court's handling of retroactivity in a pair of cases construing the Nevada Minimum Wage Amendment ("MWA"). *See Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Court*, 383 P.3d 246 (Nev. 2016) ("*Yellow Cab*"); *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014) ("*Thomas*").

In *Thomas*, the Supreme Court held that the MWA superseded a Nevada statute exempting taxicab drivers from state minimum wage laws. *Thomas*, 327 P.3d at 520–22. The

legislature's exemption of taxicab drivers, according to *Thomas*, was impliedly repealed upon the subsequent enactment of the MWA, which defines employees broadly and carves out specific exemptions not including taxicab drivers. *See id.* at 521–22 (citing Nev. Const. art. 15 § 16).

Two years later, in *Yellow Cab*, the Nevada Supreme Court considered whether the "holding in *Thomas* is effective from the date the opinion was published in 2014, only, or whether it should apply retroactively from the date the Amendment was enacted in 2006." *Yellow Cab*, 383 P.3d at 247. In that case, like the present one, the employer taxicab companies argued that "inequitable results will occur if taxicab drivers are provided back wages for work performed prior to the 2014 opinion." *Id.* at 249. The Court rejected this argument, explaining that equitable balancing would be inappropriate when construing state constitutional minimum wage law. *Id.* at 249–50. Quoting a concurrence by Justice Scalia, the Court reasoned that "[t]o hold a governmental Act to be unconstitutional is not to announce that we forbid it, but that the *Constitution* forbids it." *Id.* at 250 (quoting *Am. Trucking Ass'ns., Inc. v. Smith*, 496 U.S. 167, 201 (1990) (Scalia, J., concurring)). To conclude otherwise, the Nevada Supreme Court continued, would be to "presuppose[ ] a view of our decisions as *creating the law*, as opposed to *declaring* what the law already is." *Id.* (quoting *Am. Trucking*, 496 U.S. at 201).

Accordingly, the Nevada Supreme Court articulated the principle that when it "interpret[s] a constitutional amendment and conclude[s] that it impliedly repeals a statute, that decision applies retroactively to when the amendment was enacted regardless of the balance of equities." *Id.* at 251. Therefore, the decision in *Thomas* "did not create the law in 2014," but rather "declared what the law was upon enactment of the Amendment in 2006." *Id.*

Applying *Yellow Cab*'s reasoning here, the Nevada Supreme Court would likely give retroactive effect to *MDC II*. Because the *Yellow Cab* Court expressly held, in the MWA

Page 6 of 20

context, that a new interpretation of a constitutional amendment applies back to the date of enactment "regardless of the balance of equities," *id.* at 251, this Court predicts that the Nevada Supreme Court would come to same conclusion with respect to *MDC II*.

Defendant argues that the Nevada Supreme Court would likely limit *MDC II* to prospective application because the instant case closely approximates the "paradigm case" discussed in *Yellow Cab* as well as *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 293 (Nev. 2017). (MSJ 7:2–20, ECF No. 181). In these cases, the Court cautioned that equitable balancing may apply in the so-called "paradigm case" "when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct." *Yellow Cab*, 383 P.3d at 251 n.5; *K&P Homes*, 398 P.3d at 295. According to Defendant, because Defendant regulated its conduct consistent with *Western Cab*, and given *MDC II*'s implicit rejection of *Western Cab*, this case meets the paradigmatic hypothetical case alluded to in *Yellow Cab* and *K&P Homes*.

Preliminarily, the Court is unpersuaded by Defendant's central premise that *MDC II* overturned *Western Cab*. By its express language, *MDC II* distinguished rather than overturned *Western Cab*. In *Western Cab*, the Nevada Supreme Court considered, among other things, whether Nevada's MWA is preempted by federal law or void for vagueness. *W. Cab*, 390 P.3d at 666. To address these questions, the *Western Cab* Court looked to the text of NAC 608.102 to ascertain the type of benefit that would qualify as a health-insurance benefit under the MWA. *Id.* at 670–71. In *MDC II*, the Supreme Court addressed "whether there is some minimum quality or substance of health insurance that an employer must provide for the employer to pay the lower-tier minimum wage under the MWA." *MDC II*, 419 P.3d at 154. On this inquiry, the Court stated that "[t]his question was not argued in *Western Cab*," and that the NAC—upon which the *Western Cab* holding was based—is "an unworkable standard for making such a determination." *Id.* Nevertheless, the Court reiterated that the NAC, as well as

other sources of law, "are primarily reference points and useful illustrations of the types of benefits and coverages that insurance must cover to qualify as *health* insurance." *Id.* (emphasis in original). Thus, *MDC II* distinguished the constitutional inquiry before it from the preemption and void-for-vagueness issue presented in *Western Cab*. Because the *MDC II* Court did so without explicitly or implicitly overturning *Western Cab*, this Court finds no basis to hold otherwise.

Even insofar as *MDC II* did overrule *Western Cab*, the Court nevertheless concludes that the Nevada Supreme Court would treat *MDC II* retroactively. As noted above, the Supreme Court in *Thomas* undisputedly *did* overturn existing precedent. Nevertheless, the *Yellow Cab* Court held that *Thomas* applies retroactively. *Yellow Cab*, like the instant case, concerned interpretation of the MWA and involved the defendant's argument that inequity would result were *Thomas* to be given retroactive treatment. Given the similarities in the cases—including the same equitable arguments Defendant raises here—the Court cannot discern why this case would not be treated in the same manner by the Nevada Supreme Court.

In sum, the Court predicts that the Nevada Supreme Court would follow its reasoning in *Yellow Cab* and hold that *MDC II* clarified what the Nevada Constitution requires and did not create new law. On this basis, the Court denies Defendant's Motion for Summary Judgment.

### III. Motion to Certify Class

#### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "[C]ertification is proper only if the 'trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

147, 161 (1982)). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349; Fed. R. Civ. P. 23(a).

Upon satisfying "Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites." *Id.* at 615. First, "common questions must 'predominate over any questions affecting only individual members.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)). Second, "class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

The moving party must affirmatively demonstrate that he or she meets the above requirements. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) (citing *Dukes*, 564 U.S. at 350). However, when presented with a motion to certify, a court should not "'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

**B. Discussion**

Plaintiff moves to certify a proposed class encompassing "[a]ll current and former employees of Defendant at its Nevada locations who were paid less than $8.25 per hour at any time since May 19, 2012, but were not provided with qualifying health benefits pursuant to Nev. Const. art. XV, sec. 16." (Mot. Certify 4:9–12, ECF No. 179). The proposed class excludes "those employees who executed enforceable arbitration agreements." (*Id.*).

Defendant opposes certification on the following grounds: (1) the proposed class fails to meet the commonality and typicality requirements under Rule 23(a) because individualized inquiries will be required to determine class members' damages; (2) Plaintiff cannot satisfy the

Page 9 of 20

predominance prerequisite because the proposed class is improperly fail-safe and would otherwise require individualized inquiries; (3) litigating this matter as a class action would not be a superior method of adjudicating this case in light of individualized questions of fact; (4) the adequacy prong is unmet because the proposed class representative is without sufficient familiarity with this case; and (5) because a majority of the putative class are bound by arbitration agreements, the requirements of typicality, commonality, and predominance cannot be satisfied. (Resp. to Mot. Certify 8:16–20:9, ECF No. 186).

The below discussion first addresses Defendant's arguments based on Rule 23(a)'s requirements, then moves to those regarding Rule 23(b).

**1. Rule 23(a)**

**a)** *Numerosity*

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). A plaintiff "need not state exact figures; instead, they can satisfy the numerosity requirement by providing reasonable estimates." *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 (D. Nev. 2013).

Here, based upon Defendant's answers to Plaintiff's interrogatories, Plaintiff states that the number of employees allegedly paid at an unlawful rate is approximately a thousand persons between 2012 and March 2015. (Mot. Certify 10:20–27, ECF No. 179); (*See* Def.'s Resp. to Interrog. Nos. 40, 45, Ex. 3 to Mot. Certify, ECF No. 179-3). Therefore, the Court can safely conclude that the potential class is sufficiently numerous such that the joinder of each member would be impracticable.

**b)** *Commonality*

"A class has sufficient commonality 'if there are questions of fact and law which are

common to the class.'" *Hanlon*, 150 F.3d at 1019 (internal citation omitted). As clarified in *Dukes*, a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350.

Plaintiff argues that this requirement is satisfied because the class members "share the common question of whether they were paid below the upper-tier minimum hourly wage." (Mot. Certify 12:1–5). Defendant contends that the determination of whether it offered qualifying health plans to each class member will require an individualized inquiry into the cost to Defendant based upon specific employees' schedules and rates of pay. (Resp. to Mot. Certify 9:7–18, ECF No. 186).

The Court finds that commonality is met in this case. Through written discovery, Defendant acknowledged that its health benefits plans "were available to all Nevada hourly employees earning less than $8.25 per hour during the period the plans were effective." (Def.'s Resp. to Interrog. No. 23, Ex. 4 to Mot. Certify, ECF No. 179-4). Because of the evidence that Defendant had a uniform policy, and that Plaintiff's proposed class is tailored to including only those employees who were allegedly damaged by this uniform policy, commonality is satisfied. *See Cruz v. MM 879, Inc.*, 329 F.R.D. 639, 645 (E.D. Cal. 2019) ("Plaintiffs have demonstrated the existence of a common compensation scheme and meal break policy that allegedly harmed the entire class of MM 879 employees, and that showing is sufficient."); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. Oct. 8, 2015) ("In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice.").

Defendant's argument with respect to individualized damage inquiries confuses Rule 23(a)'s commonality requirement with Rule 23(b)'s "predominance" requirement. As clarified

by the U.S. Supreme Court, for the purposes of commonality, "even a single common question will do." *Dukes*, 546 U.S. at 359; *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 601–602 (C.D. Cal. 2012) ("Even after *Dukes*, the commonality inquiry does not require plaintiffs to demonstrate the "predominance" of common issues over individualized ones, nor the "cohesion" of the class."). The Court will, accordingly, address Defendant's individualized inquiry argument below in the context of the predominance prong of Rule 23(b).

### c) *Typicality*

To demonstrate typicality, a plaintiff must show that her claims are typical of that of the class. Fed. R. Civ. P. 23(a)(3). "[T]he typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Thus, the named plaintiff's injuries need not be "identically positioned" with those of the class. *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). Rather, the typicality requirement looks to ensure that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 685 (quoting *Armstrong*, 275 F.3d at 869).

Here, Plaintiff alleges an injury that emanates from Defendant's uniform policy impacting all class members. In response to Plaintiff's interrogatories, Defendant stated "any employee paid less than $8.25 per hour . . . was paid that rate based upon Defendant's good-faith belief that Nevada hourly employees earning less than $8.25 per hour were entitled to enroll and should have been offered during the period the plans were effective." (Def.'s Resp. to Interrog. No. 29, Ex. 4 to Mot. Certify, ECF No. 179-4). Thus, in addition to Plaintiff's

injury being typical of that of the class members, it appears Defendant advances a good-faith defense that is equally typical to Plaintiff and the class. Further, in conjunction with the commonality analysis above, the fact that each class member would be subject to individualized damage awards does not defeat typicality. *See Hanon*, 976 F.2d at 508 ("Typicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140–41 (9th Cir. 2016) ("In wage-and-hour disputes, such individualized damages inquiries are common, and typically do not defeat certification.").

### d) *Adequacy of Representation*

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In *Hanlon*, the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.*

Here, at this juncture, there is nothing in the record to suggest there is a conflict of interest between Plaintiff and counsel. As to the named Plaintiff, the Court is satisfied that he will vigorously prosecute the instant case. As Plaintiff points out, Plaintiff has been involved in this action for four and a half years, participated in discovery, and successfully appealed the instant matter to the Ninth Circuit. (Mot. Certify 15:3–8, ECF No. 179). The Court further finds that class counsel, having thirty-five years of legal experience and being in charge of class action and complex high damages litigation for his firm, will competently and vigorously prosecute the instant case. (*See* Springmeyer Biography, Ex. 6 to Mot. Certify, ECF No. 179-6).

Defendant counters that Plaintiff is not an adequate class representative because he lacks

sufficient knowledge concerning this suit. According to Defendant, Plaintiff's deposition testimony shows that he is unaware of the "MWA" or what "qualified health insurance means." (Def.'s Resp. 17:12–13, ECF No. 186). Defendant also points out that Plaintiff stated he reviewed the complaint for the first time a year after its filing, and testified he declined health insurance because it was too expensive, rather than because of the types of services covered under the plan, as asserted in his response to Defendant's interrogatories. (*Id.* 17:9–18:6).

The Court finds that Plaintiff sufficiently fulfills the requirements for serving as class representative. Defendant's arguments as to Plaintiff's knowledge of the suit is inconsistent with the Ninth Circuit's low bar for qualifying as an adequate class representative. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that he understands his duties and is currently willing and able to perform them. The Rule does not require more."); *In re Twitter Inc. Secs. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018) ("[T]he threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim [ ] and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case.").

### 2. Rule 23(b)

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

#### a) *Predominance*

Defendant first argues that Plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3) because the proposed class definition is improperly "fail-safe." (Def.s' Resp. 12:2–24, ECF No. 186). A fail-safe class is "one that is defined so narrowly as to 'preclude[ ]

membership unless the liability of the defendant is established.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (quoting *Kamar v. RadioShack Corp.*, 375 Fed. App'x. 734, 736 (9th Cir. 2010)). To make this fail-safe argument, Defendant points to the proposed class definition's language of including persons "who were offered health benefits that did not qualify Defendant to pay less than [$8.25 per hour] pursuant to Nev. Const. art XV, § 16." Defendant's contention is that this definition mirrors the precise legal issue that defines this case: whether employees received sufficient health benefits to warrant wages less than $8.25. According to Defendant, for Plaintiff's class definition to essentially use the same language as the legal issue here, it will improperly prevent the Court from finding someone to be a class member until *after* the Court resolves the merits of this class-wide dispute. (*Id.*).

The Ninth Circuit has cautioned, however, that "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe," though the circuit has not ruled directly on the appropriateness of fail-safe classes. *See Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (citing William B. Rubenstein, Newberg on Class Actions § 3:6 (5th ed. 2016), which states, "many courts have held that class definitions referencing the merits of the case are not necessarily problematic."). The rationale for this caution, as suggested by the circuit's decisions, is that "[i]t is implicit in the definition of [a] class that its members are persons who *claim* to have been (or to be)" wronged. *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 722 (9th Cir. 1999). Because a class is similarly linked by allegations of wrongful conduct, denying certification based on the definition's mere reference to the ultimate issue linking them would "preclude certification of just about any class of persons alleging injury from a particular action." *Vizcaino*, 173 F.3d at 722 (quoting *Forbush v. J.C. Penney Coe.*, 994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *see also In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012). From the Ninth Circuit's caselaw, district courts in this circuit have thus

permitted apparent fail-safe definitions that reference the legal issue at the heart of cases, though most approved definitions are in the context of discrimination claims. *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 572 (N.D. Cal. 2018) (certifying a class, as well as others, defined as persons "who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges . . . ."). The circuit's disapproval of the fail-safe concept, consequently, makes Defendant's argument "tenuous at best." *Id.*

The Court, moreover, is not persuaded that Plaintiff's proposed definition is impermissibly fail-safe and should preclude certification. As discussed in this Order's section denying summary judgment, this case draws on unique circumstances because the Nevada Supreme Court has largely outlined—through objective requirements—the precise facts needed to prove a violation of the MWA. Consequently, while Plaintiff's definition references the legal issue here, it does not place the Court in an untenable, fail-safe position where it could determine membership only after proceeding through a series of individualized, subjective determinations that ultimately resolve the merits of each person's claim. *See* 1 McLaughlin on Class Actions § 4:2 (15th ed. 2018) (explaining that courts "properly look below the surface of the class definition" to determine if there are issues of ascertainability which should preclude certification). *Cf. Melgar*, 681 F. App'x at 607 ("[T]he class definition did not presuppose its success, because the liability standard applied by the district court required class members to prove more facts to establish liability than are referenced in the class definition.").

Because Plaintiff's class definition is not impermissibly fail-safe, the next issue is Rule 23(b)(3)'s mandate that a case's common questions predominate over individualized issues. The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3); *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 584 (N.D. Cal. 2018). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Cruz v. MM 879, Inc.*, 329 F.R.D. 639, 648 (E.D. Cal. 2019) (quoting *Hanlon*, 150 F.3d at 1022).

Here, Plaintiff provides evidence to show that Defendant uniformly paid the proposed class employees below $8.25 and offered a common health benefits plan each year. That evidence consequently reveals a uniform corporate practice that carries "great weight for certification purposes." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 943 (9th Cir. 2019). Further, though Defendant argues that there will need to be an individualized inquiry to determine each class member's owed wages and whether they received qualifying health benefits under the MWA, there are two reasons why that argument does not counter the predominance of common facts and related issues shared by the class. First, the Ninth Circuit has repeatedly stated that "the rule is clear: the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Thus, while the final amount of wages owed to a class member here could differ depending on an employee's hours worked and base wage, that is not fatal to class certification. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Second, to the extent Defendant argues that they paid part of an employee's health benefits premiums, (Resp. 13:10–17), Defendant cites no

evidence that this occurred with Plaintiff or proposed class members—as Plaintiff points out in the Reply. (Reply 7:26–8:1, ECF No. 187).

Accordingly, the common factual circumstances, common wage policy, and common benefits plans at issue here guide the Court to find that common issues predominate over the individualized inquiries in this matter. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 606 (E.D. Cal. 2015) (finding predominance to be satisfied pursuant to Rule 23(b)(3) after explaining that, "although the scope of the underpayment will vary from plaintiff to plaintiff, the determination of whether the policies at issue actually violate [the applicable law] will answer a bulk of the inquiry before the Court.").

### b) *Superiority*

Rule 23(b)(3) requires that a class action format be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine superiority, Rule 23(b)(3) provides a non-exhaustive list of factors for courts to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Plaintiff first argues that a class is the superior method to litigate this case because of the "relatively small amount of damages at stake for each individual." (Mot. Certify 17:10–16, ECF No. 179). Indeed, since the claim here seeks recovery for minimum wage violations, the potential recovery for each claimant would be greatly disproportionate to litigation costs if each employee were to bring their claim individually. Courts routinely find such circumstances to favor the class mechanism. *See, e.g.*, *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Additionally, because much of the evidence in this case, according to Plaintiff, will rely on the same payroll records, computer

systems, insurance benefits, and testimony, the class mechanism preserves resources of the Court and parties by avoiding thousands of individual lawsuits that would involve duplicative discovery. The Court consequently finds that the superiority element satisfied here.

### c) *Arbitration Agreements*

Finally, Defendant argues that, because a significant portion of the putative class members are bound by arbitration agreements, typicality, commonality, and predominance cannot be established. (Resp. 18:9–20:9, ECF No. 186). According to Defendant, over half of the potential class members—957 out of 1,799 employees—are likely subject to arbitration, necessitating individualized inquiries that would predominate over other issues in this matter. (*Id.* 9:12–18). In response, Plaintiff does not dispute Defendant's factual contention that greater than half of the class members are subject to arbitration agreements. (Pl.'s Reply 12:23–15, ECF No. 187). Rather, Plaintiff argues that the Court can address and resolve the extent of enforceable arbitration agreements later in this case and after class certification. (*Id.* 14:9–18).

The Court notes that Plaintiff's proposed class definition expressly excludes employees who "executed enforceable arbitration agreements." (Mot. Certify 4:9–12, ECF No. 179). Thus the definition, facially, does not implicate commonality or typicality. *Cf. Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2018 WL 6727825, at *8 (N.D. Cal. Dec. 21, 2018). Nevertheless, the Court agrees with Defendant that the class as presently defined poses significant issues for predominance because the class definition requires determination of the enforceability of arbitration agreements on an individualized basis.

The Court, however, finds that the class definition will satisfy Rule 23's requirements with the deletion of the word "enforceable" from the class definition. *See, e.g.*, *Luviano v. Multi Cable, Inc.*, No. CV1505592-BRO-FFM, 2017 WL 3017195, at *12 (C.D. Cal. Jan. 3, 2017) ("District courts have broad discretion to modify class definitions"). This will eliminate the

need for hundreds of individualized "mini trials" that would otherwise inhibit determination as to whether certain members are, indeed, eligible to participate in this class action. The definition is hereby amended to include a class comprising:

> All current and former employees of Defendant at its Nevada locations who were paid less than $8.25 per hour at any time since May 19, 2012, but were not provided with qualifying health benefits pursuant to Nev. Const. art. XV, sec. 16, excluding those employees who executed arbitration agreements.

Subject to this modification, the Court is satisfied that Plaintiff's proposed class meets the requirements set forth in Rule 23(a) and (b). As such, the Court grants in part and denies in part Plaintiff's Motion to Certify.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification, (ECF No. 179), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 181), is **DENIED**.

**DATED** this __26__ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court